IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. DAMRON, *et al.*, | : | |
| Plaintiffs, | : | Civil Action 2:09-cv-50 |
| v. | : | Judge Marbley |
| GARY SIMS, | : | Magistrate Judge Abel |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to Plaintiffs' Motion for Partial Summary Judgment (Doc. 11). This motion was signed, and thus brought, by Plaintiffs James E. Damron, Billy J. McClurg, Roger Green, Steve Hamilton, Jason Ellis, and Brian Vidrine (the "Plaintiffs"). The sole defendant in this case is Gary Sims ("Sims"), the Ohio Department of Rehabilitation and Correction ("ODRC") Religious Services Administrator.

I.  **Factual background**

The plaintiffs, prisoners at various Ohio penal institutions, allege that they are all sincere adherents of the Christian Separatist religion. In their complaint, they allege that they have been denied the free exercise of religion due to failure to permit (1) work proscription on the Sabbath; (2) observance of various Christian Separatist holidays; (3) separate worship for adherents of the Christian Separatist Church apart from nonwhites and homosexuals; (4) cell separation from nonwhites and homosexuals; (5) Christian Separatist religious literature within Ohio prisons;

and (6) the equal availability of Christian Separatist religious literature in prison chapels and libraries.  They assert that their First and Fourteenth Amendment rights have been violated, as well as Article I, Section 7 of the Ohio Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc.

Each plaintiff identified in the complaint a date upon which he alleges that he filed "his religious accommodation request", and a date upon which his request was denied.  Some identify a date upon which Defendant affirmed the denial; others allege that Defendant failed to respond.  They allege generally that "[a]ll acts complained of herein occurred between February, 2008 when Plaintiffs initiated their religious requests to the present and are continuing and ongoing." (Doc. 13 at 3.)  Plaintiff James E. Damron attached a declaration to the motion for partial summary judgment, although it generally stated only legal conclusions based upon various prison regulations.  (Doc. 11-1 at 1-2.)

## II.     Summary judgment standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  To avoid

summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III. Plaintiffs' motion

Plaintiffs' motion addresses only their rights to work proscription on the Sabbath and "to religious literature to be screened under the least restrictive means standard of RLUIPA." (Doc. 11 at 2.) The Court will address these in reverse order.

#### A. Claim for exclusion of literature

Plaintiffs' argument for summary judgment on this issue is as follows:

> Defendant and ODRC screen religious literature under the outdated "reasonableness" standard of Turner v. Safley, 482 U.S. 78 (1987), as mandated through Ohio Administrative Regulation 5120-9-19. However, as with the passage of the Religious Freedom Restoration Act, the Passage of the Religious Land Use and Institutionalized Persons Act (42 U.S.C. 2000cc) requires that religious publications are no longer subject to the "reasonableness" standard of Turner v. Safley or Thornburgh v. Abbott (1989), 490 U.S. 401, 414-419. Rather, RLUIPA, like RFRA before it, requires religious materials to be received under the "least restrictive means" standard which is more favorable to prisoners. Lawson v. Dugger, 844 F.Supp. 1538. See also, Mann v. Wilkinson, Case No. C2-00-706, U.S. District Court for Southern District of Ohio, Eastern Division (Order of December 21, 2007).
>
> Clearly, Plaintiffs are entitled to summary judgment on the claim to have Christian Separatist religious literature screened under the "least restrictive means" standard of RLUIPA.

(Doc. 11 at 2-3.)

The federal courts have the power to adjudicate "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made", as well as certain "Controversies" involving state governments. Art. III, Sect. 2, U.S. Const. They cannot hear hypothetical cases; "a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls

4

outside the scope of the constitutional words "Cases" and "Controversies". *Alvarez v. Smith*, 130 S.Ct. 576, 580-581 (2009). The United States Supreme Court has long recognized that "[a] justiciable controversy is... distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). The Court is "capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law." *Osborn v. Bank of U.S.*, 22 U.S. 738 (1824).

Plaintiffs argue that they are entitled to have religious publications screened under a certain constitutional standard, and that the ODRC's current screening policy violates their rights. This may or may not be so. They have not, however, alleged that any particular publication was barred on any particular occasion, and that any particular plaintiff had been harmed thereby.[1] Without an actual, specific dispute requiring adjudication, this Court has no constitutional power to act. It is not an investigative or policy-making body which can conduct a review of the ODRC's policies, whatever the basis for Plaintiffs' arguments that ODRC's policies

---

[1] Plaintiffs in their Complaint each mentioned that they had filed a request for a "religious accommodation", though to accommodate what they do not say. (Doc. 1-2 at 2-3.) Plaintiff Damron, in his declaration accompanying the motion for partial summary judgment, simply stated a conclusion that "[a]s the Christian Separatist religion is not an "approved" religion within ODRC, inmates may be punished for the possession of religious literature associated with the Christian Separatist faith." (Doc. 11-1 at 2.) He did not, however, state that he, or any of the other plaintiffs, ever had been punished for such possession, or that he had ever requested and been denied permission to obtain some such material.

are wrong. The Court exists to hear controversies, and Plaintiffs have not described any particular incident about which they complain. Because Plaintiffs have not identified such an actual dispute, the Court cannot grant them summary judgment.

B. Work proscription claims

Plaintiffs present their claims for denial of religious work proscriptions in a similar manner. They argue that inmates are, under certain circumstances, constitutionally entitled to religious work proscriptions, and that they therefore are so entitled. However, Plaintiffs again, despite having generally pled that each was denied a religious accommodation request, do not specifically allege that any particular plaintiff was forced to work on any particular Sabbath. As Plaintiffs merely complain generally about the ODRC's policies, rather than alleging that they have ever actually been injured by them or denied some specific exercise of their religious rights, the Court cannot grant Plaintiffs summary judgment on this claim.

The Court will note, however, that Defendant's memorandum contra summary judgment was accompanied by a declaration by Defendant. He stated that:

> Inmate Damron is at Chillicothe Correctional Institution, where an inmate may request and receive one regular day off work per week. This day off may be a Sunday. Inmate Ellis works as a program aide at Trumbull Correctional Institution where he works Mondays through Thursdays. Inmate Brian Vidrine is currently in segregation at the institution where he is incarcerated and so has no work responsibilities.

(Doc. 71-1 at 1-2.) Defendant's declaration arguably supports a finding of mootness

on this issue with respect to Defendant Damron, as it states that Plaintiff may elect, under the rules of his institution, to take one day of his choice off per week. However, I reiterate my recent finding in a similar case, *Elliott v. Sims*, Southern District of Ohio Case No. 2:08-cv-01144:

> It is manifest... that prisoners can be, and are, repeatedly transferred to new jobs. Whether or not Plaintiff's job assignment might presently constitute a substantial burden on the exercise of his religious beliefs is somewhat irrelevant, if his particular job could change at any moment.

(Report and Recommendation of January 5, 2010, p. 14.) The jobs of other plaintiffs in this case could presumably change at any time to different positions which did mandate work on their Sabbath.

As Plaintiffs have not specified what acts Defendant committed they claim were unconstitutional, it is premature for the Court to address the question of whether Defendant was, in doing them, protected by qualified immunity.[2]

## IV. Conclusions

Plaintiffs have argued that Defendant unconstitutionally denied them certain religious accommodations. However, they have not identified what these were, except to generally describe policies of the ODRC. As explained above, the federal courts can only hear actual disputes, not hypothetical questions of policy. The Court therefore cannot grant Plaintiffs summary judgment on the claims they have

---

[2] I do, however, likewise reiterate my note in the January 5, 2010 *Elliott v. Sims* Report and Recommendation that the Court's judgment as to whether Defendant Sims is acting reasonably in light of established law is informed by its June 14, 2005 Order in *Grigsby v. Sims*, Case No. 2:04-cv-882.

addressed in their motion for partial summary judgment. I **RECOMMEND** that Plaintiffs' motion for partial summary judgment (Doc. 11) be **DENIED**.[3]

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

                                                              s/Mark R. Abel
                                                              United States Magistrate Judge

---

[3] Defendant has not cross-moved for any relief of his own, and requested only that Plaintiffs' motion be denied. (Doc. 71 at 7.)